IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SCOTT M. KELLY,                       :        CIVIL ACTION
                                      :
          Plaintiff,             :        NO. 08-01660
                                      :
             v.                  :
                                      :
COUNTY OF MONTGOMERY, et al.,   :
                                    :
          Defendants.           :

**MEMORANDUM**

Giles, J.                                                           August 8, 2008

## I.  INTRODUCTION

Before the court is Defendants County of Montgomery, Stephen A. Drobrowolski, James Ficzko, Christopher J. Murphy and Michael F. Hamel's Motion to Dismiss Plaintiff Scott M. Kelly's Complaint pursuant to Rule 12(b)(6).  Defendants Drobrowolski and Ficzko are Adult Probation Officers for the Department of Adult Probation of Montgomery County.  (Compl. ¶¶ 3-4.)  Defendant Murphy is an Adult Probation Officer and Supervisor for the Department of Adult Probation of Montgomery County.  (Id. at ¶ 5.)  Defendant Hamel is an Adult Probation Officer and Chief for the Department of Adult Probation of Montgomery County.  (Id. at ¶ 6.)

Plaintiff's claims arise from his arrest and subsequent detention in March 2005 due to a violation of probation after re-sentencing.  Plaintiff alleges that Defendant Drobrowolski incorrectly reported his sentence to the sentencing court as being consecutive, rather than concurrent, at the re-sentencing.  (Id. at ¶ 12.)  Plaintiff further alleges that Defendants Murphy and Hamel approved the recommendation to the court of the consecutive sentence when they knew or ought to have known that the law permitted only a concurrent probation sentence.  (Id. at ¶¶ 18, 22.)  Plaintiff claims that Defendants Drobrowolski and Murphy's misrecording and

misreporting his probation sentence as being consecutive, rather than concurrent, during two re-sentencing hearings, as well as Defendant Hamel's approval of this misreporting by supervisors, caused his probation release date to be unlawfully extended by the sentencing court. (Id. at ¶¶ 29-32.)  Further, Plaintiff claims that Defendants subjected him to unlawful arrest and incarceration based on a claim of violation of probation at the time when under law he should not have been subject to probation. (Id. at ¶¶ 39-40.)

Plaintiff filed suit against Defendant County of Montgomery and Defendants Drobrowolski, Ficzko, Murphy and Hamel ("Probation Officer Defendants") in their individual and official capacities as probation officers for the County of Montgomery.  Plaintiff brings Count I of his complaint pursuant to 42 U.S.C. § 1983 for alleged violations of the First, Fourth, and Fourteenth Amendments.  Plaintiff alleges that Defendants caused him to be subjected to unreasonable and excessive force, unlawful search and seizure, and unlawful arrest and subjected him to malicious prosecution. (Id. at ¶ 46.)  He further alleges that these Defendants deprived him of his right to be secure in his person and property and of due process of law. (Id.)

In Count II, Plaintiff alleges several causes of action against Defendants under state law, including assault, false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress. (Id. at ¶ 50.)

As to Count I, Plaintiff concedes that he has not alleged facts to support a claim under 42 U.S.C. § 1983 based on a violation of the First Amendment. (Pl.'s Answer in Opp'n to Defs.' Mot. to Dismiss Pl.'s Compl. 10.)  As to Count II, Plaintiff also concedes that Defendant County cannot be liable for intentional torts of its employees pursuant to 42 Pa. Cons. Stat. Ann. §§ 8541

2

and 8542.[1]  (Id.)  Plaintiff further concedes that the official capacity claims against the Probation

Officer Defendants restate the claims against Defendant County of Montgomery and should be

dismissed.  (Id.)  Therefore, the court dismisses these claims with prejudice.

At issue in this motion to dismiss, therefore, is the question of whether Plaintiff has pled,

or could plead, a viable claim against Defendants under 42 U.S.C. § 1983 on the basis of alleged

violations of the Fourth and Fourteenth Amendments (Count I) and against the individual

Probation Officer Defendants in their individual capacities as to the state law claims (Count II).

Defendants' Motion to Dismiss is GRANTED for the reasons set out below.

Under Count I, the court concludes that the individual Probation Officer Defendants are

by law entitled to absolute immunity, or, in the alternative, qualified immunity.  The Probation

Officer Defendants acted in a judicial capacity to aid the sentencing court in determining

Plaintiff's sentence.  His arrest and detention were pursuant to a bench warrant, an order of the

court, as contrasted to discretionary actions by executive branch officers.  The court, not the

Probation Officer Defendants, sentenced Plaintiff.  The sentences imposed were deemed

intentional and independently adjudged.  The court determined there was probable cause that

Plaintiff violated the terms of probation and by order directed that he be arrested and detained.

Review of the Complaint shows that all actions attributed to the Probation Officer Defendants

were performed by them in an adjudicatory capacity under the umbrella of the court.

---

[1] Defendants argue that the Political Subdivisions Tort Claims Act, 42 Pa. Cons. Stat.
Ann § 8541, limits the liability of Defendant County of Montgomery.  (Defs.' Mot. to Dismiss
Pl.'s Compl. at 17).  Section 8541 states: "[e]xcept as otherwise provided in this subchapter, no
local agency shall be liable for any damages on account of any injury to a person or property
caused by any act of the local agency or an employee thereof or any other person."  42 Pa. Cons.
Stat. Ann. § 8541 (West 1998).

In the alternative, the Probation Officer Defendants are entitled to qualified immunity. Plaintiff has pled a violation of his constitutional rights under the Due Process Clause of the Fourteenth Amendment.  Plaintiff contends that the Probation Officer Defendants knew that the sentencing court, upon finding a violation of probation, could not impose upon him a consecutive sentence if a concurrent sentence had been originally imposed pursuant to a plea agreement. These claimed rights allegedly derive from Commonwealth v. Anderson, 643 A.2d 109 (Pa. Super. Ct. 1994), in which a panel divided 2-1 held that a court could not impose a consecutive sentence at re-sentencing when the original sentence pursuant to a negotiated plea agreement called for a concurrent sentence.

However, even a cursory review of the law shows that the 1994 holding in Anderson could not have represented a clearly established right as of the time of Plaintiff's re-sentencings. The subsisting Pennsylvania Sentencing Code, 42 Pa. Cons. Stat. Ann. §§ 9721(a), 9771, explicitly allowed for the imposition of consecutive sentences upon re-sentencing.[2]  The Sentencing Code was in full force at all times relevant in this case.  Anderson was widely criticized prior to 2002 as an evisceration of judicial discretion by other Superior Court panels. Anderson was abrogated by the Supreme Court of Pennsylvania on March 29, 2005, prior to Plaintiff's release from custody on April 12, 2005, making it clear that the Anderson holding was

---

[2] The applicable statute provides, "[i]n determining the sentence to be imposed the court shall . . . consider and select one or more of the following alternatives, and may impose them consecutively or concurrently: (1) An order of probation. (2) A determination of guilt without further penalty. (3) Partial confinement. (4) Total confinement. (5) A fine. (6) County intermediate punishment. (7) State intermediate punishment."  42 Pa. Cons. Stat. Ann. § 9721(a). Additionally, "[t]he court may revoke an order of probation upon proof of the violation of specified conditions of the probation.  Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing."  Id. at § 9771.

never law.  See Commonwealth v. Wallace, 870 A.2d 838, 840 (Pa. 2005).

All claims against Defendant County of Montgomery are dismissed.  Plaintiff's claims against the County were actions undertaken by the Probation Department as an arm of the court. Such claims cannot proceed against the County in its executive capacity as all the actions of the Probation Officer Defendants are attributable solely to the Court of Common Pleas of Montgomery County, the judicial branch of the Commonwealth of Pennsylvania.  As will be explained below, the 2002 consecutive probation sentence was a lawful sentence from which Plaintiff did not appeal.  Plaintiff presumably was represented by counsel who had access to the record of all sentences.

Likewise, under Count II, which alleges state law claims, the court finds that Plaintiff cannot state a claim against the Probation Officer Defendants in their individual capacities because their actions were lawful, irrespective of Anderson.  They were lawful necessarily because the officers were an extension of the Montgomery County court system, whether they recommended sentences, made internal notes, supervised criminal defendants under probation orders, recommended revocation of probation proceedings, applied for bench warrants, or recommended probationers' arrests and detentions pending due process hearings for probable violations of probation.

## II.  FACTUAL BACKGROUND

The series of events giving rise to Plaintiff's claim began in January 2000.  (Compl. ¶ 9.) During that time, Plaintiff entered into a negotiated guilty plea with the Montgomery County District Attorney's Office for several misdemeanors.  (Id.)  The sentencing court accepted, but

5

was not required to accept, the plea agreement.  It provided that Plaintiff would serve one year probation for theft, one year probation on an additional count of theft, and two year's probation for corruption of minors.  (Id.)  The first probation period for theft was to run *concurrently* with the two years of probation for corruption of minors.  (Id.)  The second probation period for theft was to run *consecutively* to the first period of probation for theft and *concurrent* to the probation period for corruption of minors for a total of two years' probation.  (Id.)  Pursuant to this plea agreement, the court sentenced Plaintiff to one year's probation for theft, one year's probation on an additional count of theft and two years' probation for corruption of minors for a total of two years' probation.  (Id.)

In December 2001, Plaintiff was arrested for a violation of probation.  (Id. at ¶ 10.)  On April 25, 2002, Plaintiff was re-sentenced to time served of twelve months for the first theft charge.  (Id. at ¶ 11.)  Additionally, Plaintiff was re-sentenced to two years' probation to run *concurrently* with the sentence of time served of twelve months.  (Id.)  Plaintiff alleges that during the sentencing proceeding, Defendant Drobrowolski erroneously recorded, or noted in his office records, that Plaintiff's new probation sentences were *consecutive*, rather than concurrent.[3] (Id. at ¶ 12.)  It is not alleged that the misrecording was intentional.  Plaintiff's probation termination date was April 2, 2003 under the concurrent sentence, assuming no further cause for extension thereof or re-sentencing.  (Id. at ¶ 24.)  Because of erroneous recording of the sentence as consecutive, Plaintiff's probation end date was treated in the Probation Department's internal records as April 2, 2005.  (Id.)  Plaintiff alleges that on April 25, 2002, the Superior Court

---

[3] A sentence is officially recorded as a public record from the official transcript of court proceedings by the Clerk of Courts, not the Probation Department.

decision in <u>Anderson</u> was recognized by both the District Attorney's office and the Probation Department as prohibiting a consecutive sentence upon re-sentencing for a probation violation if the original concurrent sentence was pursuant to a plea agreement.  (<u>Id.</u> at 13.)  Plaintiff alleges that Defendant Murphy, a Department of Probation Supervisor, reviewed, and approved his sentence as being consecutive, contrary to the Probation Department's recognition of <u>Anderson</u>.  (<u>Id.</u> at ¶ 17.)  Plaintiff further alleges that during this time Defendant Hamel was Chief of the Department of Probation.  (<u>Id.</u> at ¶ 22.)

On September 18, 2002, the Montgomery County Court of Common Pleas issued a bench warrant for Plaintiff's arrest for a new probation violation.  Allegedly, Defendant Drobrowolski recommended to the court for that violation that Plaintiff receive two years' probation to run consecutive to the prior sentence.  (<u>Id.</u> at ¶ 25-26.)  Defendant Murphy allegedly approved this request.[4]  (<u>Id.</u> at ¶ 28.)  Following review of Defendant Drobrowolski's recommendation, and any other pertinent matter, the sentencing court revoked Plaintiff's parole and probation sentence.  (<u>Id.</u> at ¶ 29.)  The sentencing court sentenced Plaintiff to prison for the balance of the prior sentence with a release date of August 4, 2003.[5]  (<u>Id.</u> at ¶ 30.)  Additionally, it re-sentenced

---

[4]  Plaintiff's allegations of willful misconduct of the Probation Department Defendants in the recording in their records of the sentence as consecutive and not concurrent and in making a recommendation to the court accordingly, (Comp. ¶¶ 15-18), does not change the conclusion that their recommendations to the court were advisory only and subject to the sentencing court's exercise of independent judgment as to the record, the violation and the appropriate disposition. It was the court's duty to apply the law and determine the sentence.  The county court imposed Plaintiff's sentence, not the Probation Department.  If the court made an error, the error was the court's.  If there was a judicial mistake of material fact or law, Plaintiff's due process rights were protected through the appeal process.

[5]  Plaintiff initially states that his probation end date was August 4, 2003.  (<u>Id.</u> at ¶ 30.) Later in the complaint, Plaintiff states that his probation end date was August 6, 2003.  (<u>Id.</u> at ¶ 38.)  The court uses the August 4, 2003 date in its analysis.

Plaintiff to a probation period of two years which ran consecutively with the incarceration sentence such that the new probation was expected to terminate on August 4, 2005.  (Id. at ¶ 31.) No appeal was taken by Plaintiff from the re-sentence order.

In March 2005, Defendant Ficzko served Plaintiff with notice that he had committed another violation of probation on the September 2002 re-sentence.  (Id. at ¶ 34.)  Pursuant to a bench warrant issued upon application of the Probation Department, Plaintiff was arrested and detained at the Montgomery County Correctional Facility, pending a violation of probation hearing.  (Id. at ¶¶ 33-34.)  Defendant Ficzko allegedly reported to the sentencing court that Plaintiff was still subject to probation when he knew, or should have known, that under law his probation had ended on August 4, 2003.  (Id. at ¶ 35.)  Plaintiff remained detained from March 17, 2005 until April 12, 2005.  (Id. at ¶ 40.)  On April 12, 2005, at the due process hearing, the court apparently became persuaded that Plaintiff's probation period had been erroneously imposed, following Anderson, and should have expired on August 4, 2003.[6]  (Id. at ¶ 41-42.)

On February 7, 2008, Plaintiff filed this complaint in the Court of Common Pleas of Montgomery County.  On April 6, 2008, Defendants removed the case to this court on the grounds that this court has original jurisdiction over the matter pursuant to 28 U.S.C. § 1331.

### III.  STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "'accept all factual

---

[6] The reasoning of the court is not stated in the complaint.  However, it is difficult to understand how Plaintiff could have argued successfully that his probation should have ended on August 4, 2003 when he had committed a probation violation prior to that date and had been re-sentenced.

allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v.  County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (stating that this statement of the Rule 12(b)(6) standard remains acceptable following the U.S. Supreme Court's decision in Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)).

"The pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S. Ct. at 1965).  To satisfy this requirement, a plaintiff must plead "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Id.

## IV.  DISCUSSION

### A.    Count 1: Claims Under 42 U.S.C. § 1983.

Plaintiff's claim under Count I arises under 42 U.S.C. § 1983 for an alleged deprivation of constitutional rights due to his arrest and incarceration based on the consecutive sentence imposed in September 2002.  Pursuant to 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983 (2000).

Defendants argue that the sentence that Plaintiff received was legal under Pennsylvania law at the time it was made and, therefore, all Defendants are relieved of liability.[7]  (Defs.' Mot. to Dismiss Pl.'s Compl. 3, 5.)  Alternatively, Defendants maintain that the law regarding consecutive sentences was not clearly established and as a result the individual Defendants are entitled to qualified immunity.  (Id. at 11.)  Defendants further assert that the nature of the actions that led to Plaintiff's claims are adjudicatory and, therefore, the individual Defendants are entitled to absolute immunity.  (Id. at 13-14.)

Plaintiff counters that Anderson held that a court could not impose a consecutive sentence at re-sentencing when the original sentence called for a concurrent sentence pursuant to a negotiated plea agreement and represented the law during the time period of his sentencing in 2002 and his arrest in 2005.  (Pl.'s Answer in Opp'n to Defs.' Mot. to Dismiss Pl.'s Compl. 3.)  Although Plaintiff recognizes that Anderson was abrogated in March 2005, prior to the April 12, 2005 due process hearing, he maintains that the law governing sentencing upon revocation of probation was clearly established as of August 4, 2003 when his probation should have ended and, therefore, Defendants are not entitled to qualified immunity.  See Commonwealth v. Wallace, 870 A.2d 838, 840 (Pa. 2005); (Pl.'s Answer in Opp'n to Defs.' Mot. to Dismiss Pl.'s Compl. 8.)  Referring to the September 2002 re-sentencing, he alleges that "no reasonable probation officer could have believed that this consecutive sentence was lawful."  (Compl. ¶ 16.)

_____

[7] Defendants anticipate Plaintiff's possible argument that because the sentencing court determined that Plaintiff's sentence was incorrect on April 12, 2005 Defendants are collaterally estopped from arguing that the sentence was legal under the Sentencing Code.  (Defs.' Mot. to Dismiss Pl.'s Compl. 8.)  Plaintiff urges that this argument is premature and cannot be advanced until there is discovery.  (Pl.'s Answer in Opp'n to Defs.' Mot. to Dismiss Pl.'s Compl. 6 n.4.)  The issue is a legal one which is now ripe for decision on Defendants' Motion to Dismiss.

10

1.      **Absolute Immunity.**

      a.      **Standard.**

The court first considers whether the Probation Officer Defendants are entitled to absolute immunity.  To survive a 12(b)(6) motion for a claim under 42 U.S.C. § 1983, "a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under color of state law." Phillips, 515 F.3d at 234; see also 42 U.S.C. § 1983.  Even when a plaintiff pleads the requisite elements, government officials may be entitled to immunity for an alleged violation of a constitutional right.  See Harlow v. Fitzgerald, 457 U.S. 800, 807.  For the court to grant Defendants' 12(b)(6) motion based on absolute immunity, "the defense must clearly appear on the face of the complaint." Wilson v. Rackmill, 878 F.2d 772, 777 (3d Cir. 1989).  The existence of absolute immunity is a question of law for the court to decide.  See Hamilton v. Leavy, 322 F.3d 776, 783 (3d Cir. 2003).

Absolute immunity is available to government officials for "actions performed in a 'quasi-judicial' role." Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)).  The determination of absolute immunity considers whether the government official performed a particular function in an adjudicatory capacity.  See Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986).  Adjudicatory functions "include[] activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior 'intimately associated with the judicial phases' of litigation." Kulwicki, 969 F.2d at 1463 (quoting Imbler, 424 U.S. at 430); see also Williams v. Consovoy, 453 F.3d 173, 178 (3d Cir. 2006) ("[Absolute] immunity attaches to those who perform functions integral

11

to the judicial process."); Hamilton, 322 F.3d at 785 ("Quasi-judicial absolute immunity attaches

when a public official's role is 'functionally comparable' to that of a judge." (quoting Butz v.

Economou, 438 U.S. 478, 513 (1978))) .  Government officials acting in an executive capacity,

such as performing administrative functions, may be afforded qualified immunity.  See Kulwicki,

969 F.2d at 1463.

       "[P]robation officers . . . are entitled to quasi-judicial immunity when engaged in

adjudicatory activities."  Thompson v. Burke, 556 F.3d 231, 236 (3d Cir. 1977).  Absolute

immunity is available to "individuals who perform investigative or evaluative functions at a

governmental adjudicative entity's request to assist that entity in its decision making process."

Williams, 453 F.3d at 178.  When a probation officer acts as "an arm of the court," such as in

preparing a recommendation to the court, absolute immunity shields the individual from civil

liability under 42 U.S.C. § 1983.  See id.; see also Stankowski v. Farley, No. 07-2792, 2007 WL

3089539, at *1 (3d Cir. Oct. 24, 2007) (finding that probation officer was entitled to absolute

immunity in his preparation of a pre-sentence report because it was a function that assisted the

judge in determining sentence).  In this capacity, probation officers function as an arm of the

judiciary, not as members of the executive or legislative branch of government.  See Williams,

453 F.3d at 178.

              **b.**      **The Probation Officer Defendants Are Entitled to Absolute Immunity.**

       The court finds that the Probation Officer Defendants are entitled to absolute immunity

because their activities relative to Plaintiff's arrest and incarceration were adjudicatory in nature.

See Kulwicki, 969 F.2d at 1463.  Plaintiff alleges that Defendant Drobrowolski recorded Plaintiff's sentence as consecutive at his sentencing on April 25, 2002 and later requested a bench warrant to arrest Plaintiff for a violation of probation.  (Compl. ¶¶ 12, 25.)  Following Plaintiff's arrest, Plaintiff alleges that Defendant Drobrowolski requested a hearing from the sentencing court due to Plaintiff's probation violation and represented to the court that Plaintiff be sentenced to consecutive terms of probation.  (Id. at ¶ 26, 27.)  Plaintiff further alleges that Defendants Murphy and Hamel approved Defendant Drobrowolski's recording of Plaintiff's sentence as consecutive, the subsequent request for a probation violation hearing and representation that Plaintiff had had a consecutive sentence.  (Id. at ¶¶ 17, 22, 28.)  Additionally, Plaintiff alleges that Defendant Ficzko requested a bench warrant for Plaintiff's arrest in March 2005 and represented to the court that Plaintiff was subject to probation, when he allegedly was not.  (Id. at ¶ 35.)

These actions must be categorized as functions that assist a court in determining if a criminal defendant violated a court order and in determining an appropriate sentence.  See Hamilton, 322 F.3d at 785.  Plaintiff argues that the Probation Officer Defendants were merely recording the conduct of others and therefore did not engage in adjudicatory functions.  (Pl.'s Answer to Defs.' Mot. to Dismiss Pl.'s Compl. 9.)  Plaintiff's allegations misconstrue the scope of the adjudicatory function.  A report of the Probation Department's recordings of sentences, which could be checked against the public record, and its recommendations to the court are similar to the function of preparing and submitting a pre-sentence report for court review.  For these acts, probation officers are entitled to absolute immunity.  See Stankowski, 2007 WL 3089539, at *1.  In fact, Plaintiff pleads that theirs were judicial functions when he avers that the

13

court *relied* on the Probation Officer Defendants' recommendations and sentenced Plaintiff accordingly.  (Compl. ¶ 29 (emphasis added).)  The word "relied" denotes that the court delegated to the Probation Department some part of its judicial function.

It was the court's duty and responsibility to impose a legal sentence.  If there was probation officer error in any report or recommendation adopted by the sentencing court, such error is imputed solely to the court.  Accordingly, the Probation Officer Defendants' activities were adjudicatory in nature and are afforded absolute immunity.  See Kulwicki, 969 F.2d at 1463.


### 2.  Alternatively, Qualified Immunity Applies.

#### a.  Standard.

In the alternative, the court considers whether the Probation Officer Defendants are entitled to qualified immunity.  A determination of whether qualified immunity exists must be made early in the litigation because "[q]ualified immunity is 'an entitlement not to stand trial or face other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

The Supreme Court has set forth an objective standard for affording government officials qualified immunity in Harlow v. Fitzgerald.  457 U.S. 800, 818 (1982).  The court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Id.  Municipalities and local government units cannot assert qualified immunity.  See Owen v. City of Independence,

445 U.S. 622, 638 (1980).  The determination of "whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court."  Curley v. Klem, 499 F.3d 199, 211 (3d Cir. 2007).

When a defendant asserts qualified immunity, "the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered." Saucier, 533 U.S. at 200; see Wright v. City of Philadelphia, 409 F.3d 595, 601 (3d Cir. 2005).

In determining whether a right is clearly established, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  The right in question must have been "'clearly established' in a more particularized . . . sense."  Good v. Dauphin County Soc. Servs. for Children & Youth, 891 F.2d 1087, 1092 (3d Cir. 1989).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of preexisting law the unlawfulness must be apparent." Id.

### b.    The Probation Officer Defendants Are Entitled To Qualified Immunity.

#### I.    Statement Of A Claim For Violation Of A Constitutional Right.

Plaintiff has stated a claim for a violation of his constitutional rights.   A claim under 42 U.S.C. § 1983 must be based on the deprivation of a right secured by the Constitution or a federal statute, not state law.  See Baker v. McCollan, 443 U.S. 137, 146 (1979).  The Due Process

Clause of the Fourteenth Amendment protects an individual's liberty interest.  See U.S. Const. amend. XIV, § 1.  "A liberty interest may arise from the Constitution . . . or it may arise from an expectation or interest created by state laws."  Wilkinson v. Austin, 545 U.S. 209 (2005); see also Asquith v. Dep't of Corr., 186 F.3d 407, 409 (3d Cir. 1999).

The constitutional rights at issue in this case, protected through the Due Process Clause of the Fourteenth Amendment, turn on the holding in Anderson that a sentencing court is bound by a negotiated plea agreement to impose concurrent sentences upon re-sentencing.  See 643 A.2d at 114-15 (Pa. Super. Ct. 1994).  Even though Anderson was later abrogated, at the time of Plaintiff's alleged illegal sentencing the panel holding, irrespective of validity, described the bounds of a court's discretion upon re-sentencing.  Therefore, this holding establishes a liberty interest that is protected through the Due Process Clause of the Fourteenth Amendment.  See Wilkinson, 545 U.S. at 221.

Plaintiff alleges that Defendants violated his Fourth and Fourteenth Amendment rights in recording his sentence as consecutive at re-sentencing, continuing to represent his sentence as consecutive, and causing his arrest on the basis of a violation of this consecutive probation sentence.  (Compl. ¶¶ 12, 17, 22, 25.)  Plaintiff alleges that Anderson prohibited the imposition of consecutive sentences upon re-sentencing and therefore Defendants' failure to follow Anderson resulted in a deprivation of his Fourth and Fourteenth Amendments when he was arrested and incarcerated in May 2005.  (Id. at ¶ 13.)  However, Plaintiff does not specify how the Anderson holding triggered a federal constitutional right under the Fourth and Fourteenth Amendments.

No case has been cited by Plaintiff or Defendants or found by the court in which a

holding of a panel of an intermediate level state court had been held to trigger a federal constitutional right.  Cf. Hope v. Pelzer, 536 U.S. 730, 742-743 (2002) (looking to case law from the relevant circuit to determine whether the right was clearly established); Elder v. Holloway, 510 U.S. 510, 516 (1994) (holding that a court should consider all relevant precedents in its qualified immunity analysis); but see Johnson v. Horn, 150 F.3d 276, 286 (3d Cir. 1998) (refusing to reach whether decisions of other circuits are relevant in determining if a constitutional right was clearly established), rev'd on other grounds sub nom DeHart v. Horn, 227 F.3d 47 (3d Cir. 2000).

### ii.      The Constitutional Right Was Not Clearly Established.

Assuming, *arguendo*, there was a violation of a constitutional right, the analysis would proceed to determine whether the right was clearly established.  See Saucier, 533 U.S. at 200. For qualified immunity to be defeated, the right of a person to be free from consecutive sentences upon re-sentencing must have been clearly established such that a reasonable person would have known that a consecutive sentence was illegal.  See Good, 891 F.2d at 1092.  The court finds that the Sentencing Code and Pennsylvania Supreme Court precedent demonstrate that the law was clearly established in just the opposite direction.  Objectively, a reasonable person in the position of the Probation Officer Defendants could have reasonably believed that a criminal defendant was subject to a consecutive sentence upon re-sentencing for a probation violation as if it was the original sentence, irrespective of a negotiated plea agreement in the first instance.

The qualified immunity inquiry is based on the law at the time the alleged constitutional violation occurred.  See Brown v. Grabowski, 922 F.2d 1097, 1110 (3d Cir. 1990).  In

determining whether the panel holding in <u>Anderson</u> was clearly established, the court considers

the time frame from the <u>Anderson</u> decision in 1994 until the time of Plaintiff's alleged illegal re-

sentencing in September 2002.   During this time period, the Probation Officer Defendants

allegedly made their decisions regarding the recording and representation of Plaintiff's sentence.

The Pennsylvania Sentencing Code then in effect explicitly stated that upon re-

sentencing, the trial court possesses the same options available to it at the time of the initial

sentencing.  <u>See</u> 42 Pa. Cons. Stat. Ann. § 9771 (West 1998).  Further, a court could impose

probation sentences consecutively or concurrently at sentencing.  <u>Id.</u> at § 9721(a).  Therefore,

<u>Anderson</u> was a decision contrary to established and subsisting law.  <u>See</u> 643 A.2d 109, 112 (Pa.

Super. Ct. 1994).

Prior to <u>Anderson</u>, the Supreme Court of Pennsylvania had held that a sentencing court is

only limited by the options available at the initial sentencing.  <u>See</u> <u>Commonwealth v. Pierce</u>, 441

A.2d 1218, 1219 (Pa. 1982) ("[U]pon revocation of probation, the court possesses the same

sentencing alternatives that it had at the time of the initial sentencing.").  The Superior Court of

Pennsylvania was bound to follow that rule.  That <u>Anderson</u> did not follow that rule in 1994

caused considerable controversy and confusion within subsequent Superior Court panels.

In <u>Commonwealth v. Smith</u>, 669 A.2d 1008, 1009 (Pa. Super. Ct. 1996), a Superior Court

panel pointed out <u>Anderson</u>'s failure to convey in its analysis the limited application of a critical

footnote from a prior decision upon which it relied.  That referenced footnote provided: "[a]ny

sentence imposed after probation revocation must not exceed the maximum sentence originally

imposed."  <u>Commonwealth v. Harrison</u>, 398 A.2d 1057, 1059 n.2 (Pa. Super. Ct. 1979).  The

<u>Smith</u> court noted that "[t]his premise, however, was intended to be applied strictly to cases

18

where a trial court resentences a defendant after having first imposed a sentence and then *suspended* the sentence pending a period of probation" and pointed out that the Anderson panel in its decision did not accurately convey the limited use of that principle.  Smith, 669 A.2d at 1010.  While Smith recognized Anderson's erroneous legal basis, it remarked, "we agree with the decision ultimately reached in Commonwealth v. Anderson."  Id. at 1010 n.4.  Plaintiff argues that the Smith court's "approval" of the Anderson holding supports the conclusion that Anderson represented clearly established law.  (Pl.'s Answer in Opp'n to Defs.' Mot. to Dismiss Pl.'s Compl. 5.)

Later Superior Court panels, attempting to respect, yet disagree, with the Anderson holding, refused to apply it in the absence of identical facts.  See Commonwealth v. Ware, 737 A.2d 251, 255 (Pa. Super. Ct. 1999) (declining to apply Anderson where the defendant received consecutive sentences upon re-sentencing because negotiated plea agreement did not specifically impose concurrent sentences); see also Commonwealth v. Gheen, 688 A.2d 1206, 1208 (Pa. Super. Ct. 1997) (refusing to apply Anderson where the defendant received concurrent sentences and was later sentenced to consecutive sentences because there was no negotiated plea agreement); Commonwealth v. Byrd, 663 A.2d 229, 230 (Pa. Super. Ct. 1995) (reaffirming the premise from Pierce, 441 A.2d 1218, 1219 (Pa. 1982), that a sentencing court may consider the same sentencing alternatives available at original sentencing during re-sentencing and declining to extend Anderson because defendant did not have a negotiated plea agreement).

After the year 2000, Superior Court panels clearly acknowledged the authority of the trial court upon re-sentencing to impose any form of sentence as long as it was within the statutory maximum.  See Commonwealth v. Fusselman, 866 A.2d 1109, 1113 (Pa. Super. Ct. 2004)

(affirming that trial court has same options available at re-sentencing as initial sentencing) (Pa. Super. Ct. 2004); see also Commonwealth v. Coolbaugh, 770 A.2d 788, 792 (Pa. Super. Ct. 2001) ("[T]he trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence."); Commonwealth v. Fish, 752 A.2d 921, 923 (Pa. Super. Ct. 2000) (same).

The Sentencing Code stated the law when Plaintiff was sentenced.  The Supreme Court of Pennsylvania's holding in Pierce, 669 A.2d 1008, 1009 (Pa. Super. Ct. 1996), represented clearly established law.  Therefore, Anderson never represented clearly established law.  As such, a probation officer and sentencing judge, referencing the Sentencing Code and Pierce, could have reasonably concluded that Plaintiff's consecutive sentence upon re-sentencing was permissible. See 42 Pa. Cons. Stat. Ann. § 9721(a); see also Harlow, 457 U.S. at 818.

In 2004, prior to the abrogation of Anderson, the Superior Court unequivocally addressed the legal error in Anderson and stated, "Anderson further ignores the nature of a negotiated plea . . . Anderson, however, gives the defendant the benefit of the bargain in spite of the fact that it was the defendant who breached the contract."[8]  Commonwealth v. Fusselman, 866 A.2d 1109,

---

[8] Superior Court panels refused to apply Anderson when the facts were not identical.  See, e.g., Commonwealth v. Fusselman, 866 A.2d 1109, 1115 (Pa. Super. Ct. 2004) ("[T]he current factual scenario does not exactly fit the Anderson model, we believe the logical underpinnings of Anderson have failed, and logical reasoning and statutory languages analyses of the Colding, et al. cases are consistent and persuasive."); Commonwealth v. Williams, 801 A.2d 584, 586 (Pa. Super. Ct. 2002) (affirming consecutive sentences upon re-sentencing because, although there was evidence of a negotiated plea agreement, there was no direct indication that sentences would be imposed concurrently).

In Commonwealth v. Adebaike, the Pennsylvania Superior Court faced a factual scenario almost identical to Anderson.  846 A.2d 759, 761 (Pa. Super. Ct. 2004).  The panel remarked, "Anderson is binding authority and must be adhered to in the present case."  Id.  Plaintiff argues that the Adebaike court's conclusion that Anderson must be followed in support of its argument that Anderson represented clearly established law.  (Pl.'s Answer in Opp'n to Defs.' Mot. to

1113 (Pa. Super. Ct. 2004).

    In Commonwealth v. Wallace, the Supreme Court of Pennsylvania stated, "[A]t any revocation of probation hearing, the court is similarly free to impose any sentence permitted under the Sentencing Code and is not restricted by the bounds of a negotiated plea agreement between a defendant and prosecutor."  870 A.2d 838, 843 (Pa. 2005).  Finding that the plain language of the Sentencing Code allowed the sentencing court the same options as those available at sentencing, the Court determined that a re-sentencing court is not restricted by a negotiated plea agreement utilized for the original sentence.  Id. at 843.  The court emphatically concluded that Anderson is "legally unsupportable and is inconsistent with both the clear and unambiguous language of the Sentencing Code and this Court's precedent."  Id. at 844.  Wallace was the clearly established law when Plaintiff appeared for his due process hearing on April 12, 2005.[9]

_____

Dismiss Pl.'s Compl. 6.)  Though the Adebaike court ultimately followed Anderson, the criticism of Anderson and its limitation to a distinct factual scenario reinforces the previous line of cases that questioned Anderson.  Further, the proclamation in Adebaike that Anderson was binding authority occurred after Plaintiff's alleged illegal re-sentencing and could not have informed the Probation Officer Defendants decision in this case.

    [9] Post-Wallace, the Superior Court decisions reiterated the Pierce rule that a sentencing court is not bound by a prior negotiated plea agreement to impose concurrent sentences and may impose consecutive sentences upon re-sentencing.  See Commonwealth v. Berry, 877 A.2d 479, 483-84 (Pa. Super. Ct. 2005) (noting that the foundation for the Anderson holding, a Pennsylvania rule of criminal procedure, had been repealed a year after the holding); see also Commonwealth v. Raphael, 879 A.2d 1264, 1266 (Pa. Super. Ct. 2005) ("The basis for the Anderson holding was the theory that when imposing a re-sentence following revocation of probation, a trial court's sentencing powers were limited by the terms of the plea agreement from the original sentencing.  This holding has been the subject of the other panels of this Court's questions and criticism . . . .  As it is well established that the sentencing alternatives available to a court at the time of initial sentencing are all of the alternatives statutorily available under the Sentencing Code, these authorities make it clear that at any revocation of probation hearing, the court is similarly free to impose any sentence permitted under the Sentencing Code and is not

In summary, the holding in <u>Anderson</u> never was clearly established law.  A person in the position of the Probation Officer Defendants and the sentencing judge could have had a reasonable basis to believe that the law permitted Plaintiff to receive a consecutive sentence upon re-sentencing without regard to a negotiated plea agreement approved at the initial sentencing.  <u>See</u> <u>Harlow v. Fitzgerald</u>, 457 U.S 800, 818; <u>see also</u> <u>Good v. Dauphin County Soc. Servs. for Children & Youth</u>, 891 F.2d 1087, 1092 (3d Cir. 1989).

For the above reasons, the court concludes that the Probation Officer Defendants are entitled to qualified immunity for their roles in recommending to the court that a consecutive sentence was a lawful exercise of sentencing discretion.  Accordingly, Defendants' Motion to Dismiss is granted as to the Probation Officer Defendants in Count I based on 42 U.S.C. § 1983.


### 3.       Defendant County Of Montgomery Is Not Liable Under Count I.

Defendant County of Montgomery is not entitled to absolute or qualified immunity because the defense is not available to governments and municipalities.  <u>See</u> <u>Owen v. City of Independence</u>, 445 U.S. 622, 638 (1980).  Municipalities and counties may be liable for acts that deprive claimants of their constitutional rights where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  <u>Monell v. Dep't of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 690 (1978); <u>see also</u> <u>Jiminez v. All Am. Rathskeller, Inc.</u>, 503 F.3d 247, 249 (3d Cir. 2007); <u>Hanks v. County of Delaware</u>, 518 F. Supp. 2d 642, 653 (E.D.

---

restricted by the bounds of a negotiated plea agreement.").

22

Pa. 2007).

Municipalities may be liable for constitutional violations that result from custom, even if it is not an official policy.  Monell, 436 U.S. at 691.  Specifically, to hold a municipality liable under 42 U.S.C. § 1983, "a plaintiff must identify a municipal policy or custom that amounts to deliberate indifference to the rights of people."  Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004).  A municipality is not liable for the actions of its employees under a theory of *respondeat superior*.  Monell, 436 U.S. at 691.

To the extent that the allegations within Paragraph 47[10] of Plaintiff's Complaint are

---

[10] Paragraph 47 alleges:

Defendant Montgomery County, acting through its Adult Department of Probation, has encouraged, tolerated, ratified and has been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

a.  Documentation of sentencing;
b.  Assuring the lawfulness of said sentences as recorded;
c.  Representation of prior unlawful sentences to courts at subsequent probationary proceedings; d. The proper exercise of police powers, including but not limited to the effecting of unlawful arrests and malicious prosecutions;
e.  The monitoring of probation officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;
f.  The failure to identify and take remedial action against probation officers who were the subject of prior civilian or internal complaints of misconduct;
g.  Probation officers' use of their status as probation officers to achieve ends not reasonably related to their probation duties;
h.  The failure of probation officers to follow established policies, procedures, directives and instructions regarding the use of their police powers to effect arrests and incarcerations;
i.  The erroneous notation of sentences and the failure of the Department's record keeping so as to identify and eliminate such errors through either a manual review process or

dependent upon the preceding Paragraphs 1 through 46, it is dismissed because the foundational

claims have been dismissed.  To the extent that the allegations in Paragraph 47 are stand-alone

allegations unrelated to Anderson sentencing issues, they are dismissed without prejudice as

being without factual support to raise a reasonable expectation that discovery will reveal

evidence of this element.  See Twombly, 127 S. Ct. at 1965.  For example, Plaintiff alleges that

Defendant County of Montgomery failed to monitor the Probation Officer Defendants even

though they had emotional or psychological problems and failed to discipline probation officers.

(Id. at ¶ 47(e).)  Plaintiff provides no factual support for these allegations.  Plaintiff further

alleges that Defendant County of Montgomery did not discipline probation officer's "use of their

status as probation officers to achieve ends not reasonably related to their probation duties."

(Compl. ¶ 47(g).)  Again, Plaintiff fails to support this vague allegation and the court dismisses

these assertions.

      Moreover, it appears that Plaintiff has not named the correct defendant in bringing claims

against the County of Montgomery.  To the extent that Plaintiff has sought to bring claims

against the County of Montgomery for actions taken by the Probation Department of the Court of

Common Pleas of Montgomery County acting in its judicial capacity, the proper defendant would

be the court.

      Notwithstanding this error, the actions of the Probation Department acting in its judicial

capacity for the Court of Common Pleas of Montgomery County were lawful under the

Sentencing Code.  See Pa. Cons. Stat. Ann. §§ 9721(a), 9771.  There could be no actionable basis

---

                         computerization.

(Compl. ¶ 47.)

for liability on the grounds that Defendant County of Montgomery or the Probation Department acting in its judicial capacity for the Court of Common Pleas of Montgomery County allegedly implemented a practice of recommending consecutive sentences to sentencing courts upon re-sentencing because the Sentencing Code clearly set forth the power of the court in that respect.

Further, there is no *respondeat superior* liability for claims under 42 U.S.C. § 1983. Accordingly, Defendant Montgomery County, cannot be held liable for actions taken by the individual Probation Officer Defendants acting in their judicial function.  See Monell, 436 U.S. at 691.  Therefore, the court finds that Defendant County of Montgomery cannot be liable for alleged violations of Plaintiff's constitutional rights.  Accordingly, Defendants' Motion to Dismiss is granted and the claims under Count 1 are dismissed with prejudice as to the Defendant County of Montgomery.


**B.     Count II: State Law Claims**

Plaintiff has conceded that the Defendant County cannot be held liable for the intentional torts of its employees and that claims against the Probation Officer Defendants in their official capacities should be dismissed.  (Pl.'s Answer in Opp'n to Defs.' Mot. to Dismiss Pl.'s Compl. 10.)  Accordingly, Defendants' Motion to Dismiss is granted and the claims are dismissed with prejudice as to Defendant County of Montgomery and to the Probation Officer Defendants in their official capacities in Count II.

As to the Probation Officer Defendants in their individual capacities, the court finds that Plaintiff has not stated a claim for violations of state law for the same reasons it has failed to state claims for violations of federal law.  The Sentencing Code accurately set forth the bounds of

a court's discretion regarding the imposition of consecutive sentences during Plaintiff's sentencing proceedings.  The decision of the Probation Officer Defendants to recommend to the court that Plaintiff receive consecutive probation sentences was lawful under the Sentencing Code.  See Pa. Cons. Stat. Ann. §§ 9721(a), 9771.  All other actions undertaken to bring to the attention of the county court probation violations by Plaintiff were as an arm of the court for which there is absolute immunity, or alternatively, qualified immunity.  Therefore, there is no basis for Plaintiff's state law claims. Plaintiff was lawfully subject to probation at the time of his arrest for probation violation.  The underlying sentence of April 25, 2002 was lawful when it was entered.  Accordingly, Defendants' Motion to Dismiss is granted and the claims are dismissed with prejudice as to the Probation Officer Defendants under Count II.


## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted.  An Order follows.